This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**THI OF NEW MEXICO AT LAS CRUCES, LLC,**
**d/b/a, Las Cruces Nursing Center,**

Petitioner-Appellant,

v.                                                                              NO.  31,588

**NEW MEXICO HUMAN SERVICES DEPARTMENT,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Barbara J. Vigil, District Judge**

Pregenzer Baysinger Wideman & Sale, PC
Marcy Baysinger
Albuquerque, NM

Schutjer Bogar LLC
Katie Maxwell, *Pro Hac Vice*
Dallas, TX

for Appellant

New Mexico Human Services Department
Robert J. Lennon, Assistant General Counsel
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**KENNEDY, Chief Judge.**

{1}    THI of New Mexico at Las Cruces, LLC (THI) operates the Las Cruces Nursing Center (Nursing Center).  THI filed an application for Medicaid assistance on behalf of one of its patients, Manuel Zuniga, which was denied.  THI requested a fair hearing on the denial, and the New Mexico Human Services Department (HSD) responded that because THI was not a proper party to represent Zuniga's interests, it could not appeal the denial of the hearing on his behalf.  THI appealed.  Eventually, after a brief hearing, the district court granted HSD's motion to dismiss the appeal based on THI's lack of standing and the case being moot due to Zuniga's death.  We affirm the district court's decision because, at this point, THI cannot acquire the required social security number for Zuniga, which precludes his eligibility from being established.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

{2}    Zuniga, a quadriplegic patient requiring long-term skilled nursing care, was admitted to the Nursing Center in November 2008.  When admitted, THI asked that he sign the Admission Agreement (Agreement), authorizing the Nursing Center to apply for Medicaid assistance benefits on Zuniga's behalf and appeal the denial of benefits in the event that he or his representative is not available to act on his behalf.

2

The Agreement was signed by Zuniga's daughter, Susana Granada, followed by an "X" for Zuniga. The Agreement states that, if "[Zuniga] is unable to physically sign his . . . name, [he] will sign below by making a mark" and that a witness must verify that Zuniga was "aware that he . . . was signing [the] Agreement and that it was his . . . intent to sign." The Agreement designated Granada as Zuniga's "[d]urable [p]ower of [a]ttorney for [h]ealth [c]are[,] . . . [l]egal [g]uardian[, and] . . . [r]esponsible [p]arty" for admitting him to its facility. Zuniga's capacity to make a mark in order to contract with THI on his own behalf on this or any document is unknown, as is whether the "X" on the Agreement was executed by him. Neither party addresses these issues, and we are agnostic as to their merits.

{3}    Some time after Zuniga was admitted, an Authorization Statement (the Statement) was executed between the Nursing Center and Zuniga that authorized the "Nursing Center, its employees, agents, and/or [THI's attorneys,] Schutjer Bogar LLC[,] . . . to take those actions that are required to secure Medicaid benefits . . . establishing . . . eligibility and filing necessary appeals to secure such benefits . . . on [Zuniga's] behalf." The Statement and its Spanish language counterpart were again signed with an "X" above Zuniga's name and contain the signatures of two witnesses.[1]

---

[1]THI represented in the hearing before the district court that it was willing to produce the witnesses who were present when the documents were signed.

The Statement assigned the right to appeal any adverse determination as to Zuniga's Medicaid application to THI.

{4}     Although no copy appears in the record, it appears that Zuniga subsequently submitted an application for Medicaid assistance or services that was denied on July 14, 2009.  A later document indicates that the application was denied "because of problems with his household status."  After the denial, THI requested a fair hearing on behalf of Zuniga to appeal the July 2009 denial of his eligibility on October 12, 2009.  HSD responded, stating that THI had no right as a healthcare provider "to a hearing to assert . . . Zuniga's rights," pursuant to 8.353.2.9 NMAC.[2]  HSD would accordingly dismiss the fair hearing appeal unless it received "a request for [a] hearing from . . . Zuniga or his legal representative by [October 26, 2009]."  (Emphasis omitted.)  The letter stated that, if the case was dismissed, THI could "seek judicial review" of the dismissal in the district court within thirty days.

{5}     THI timely appealed the dismissal of the fair hearing request to the district court.  HSD moved to dismiss the appeal.  No action was taken in the district court for another year-and-a-half, and neither side pursued judicial resolution of the case.  On May 13, 2011, following this delay, the case was reassigned to a new district judge,

_____

[2]Reimbursement for services that the Nursing Center provided is outside the purview of this case.  *See* NMSA 1978, § 27-2-45(B)(1) (1990) (permitting hospitals to submit claims for "uncovered hospital charges . . . for an illness of a medically indigent patient").

4

who reviewed the file and issued an order requesting clarification of the record as to HSD's denial of a fair hearing. The district court stated that, if no hearing had been conducted since October 2009, HSD's motion to dismiss would be denied, and HSD's denial of the fair hearing requested by THI regarding Zuniga's eligibility would be reversed.

{6}     HSD responded to this order by stating that, since October 2009, THI had submitted additional information to HSD with regard to Zuniga's eligibility. HSD had issued a second denial of eligibility on January 24, 2011, because a "social security income has not been verified." (Emphasis omitted.) THI had submitted another request for a fair hearing on the denial, which HSD stated was still pending. HSD had acknowledged the fair hearing request and set a schedule for submitting evidence and setting a decision due date of June 21, 2011. None of these responses to the district court's order mentioned that Zuniga died on September 28, 2010.

{7}     Upon learning of Zuniga's death, HSD moved to dismiss for mootness and lack of standing. THI responded by asserting that, because Zuniga had "irrevocably" assigned his right to make claims for and receive Medicaid assistance or services to THI, the right did not expire with him. THI further alleged that, had HSD timely accorded Zuniga a hearing to which he was entitled for the first denial of eligibility, the mootness argument would not exist.

5

**{8}** The district court held a hearing and granted HSD's motion to dismiss. The district court found that the right to a hearing and appeal of HSD's decision were statutory rights belonging to the Medicaid recipient, Zuniga, that are neither transferable nor assignable. The district court also found that the Agreement "did not legally or properly assign [Zuniga's] rights to pursue Medicaid benefits to THI" and rejected the Statement as impermissible under state law because it was "irrevocable." Further, the district court found that "the payment of Medicaid benefits . . . would require . . . Zuniga to have a valid social security number [and] . . . THI would not be able to secure [one] . . . on [his] behalf." The district court concluded that THI's case was moot and failed for lack of standing and dismissed the case with prejudice.

## II.    DISCUSSION

**{9}** We note that the issues of standing and THI's authorization to pursue an eligibility claim on behalf of Zuniga are deemed recognized without being ruled upon by the Court, because we resolve the case on the sole issue of Mr. Zuniga's failure to have a valid social security number at the time of his death. Thus, even if we determined that THI could pursue Mr. Zuniga's eligibility claim, it would ultimately fail for the lack of a valid social security number. "A court's interpretation of an administrative regulation is a question of law that we review de novo." *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 24, 147 N.M. 583, 227 P.3d 73.

**{10}** A social security number appears in the record in several places attached to a motion by HSD. One such location is on HSD's acknowledgment of hearing request,

which includes a social security number and lists the reason for denial of eligibility as "your social security income has not been verified." (Emphasis omitted.) However, despite "income" being listed as the reason for the denial, and the presence of a social security number, no party disputes that Zuniga's application still requires a new social security number.

{11} At the hearing before the district court, THI confirmed that it was attempting to get a number on behalf of Zuniga, which was proving difficult after his death. "A medicaid applicant/recipient must furnish his/her social security account number." 8.281.400.12 NMAC. Although the applicant does not have to receive the number before applying, "[p]resentation of an application for a social security number or proof that an application has been made at a social security administration office is considered as meeting this requirement." *Id.* In addition to an application, the Social Security Administration "will require the applicant to furnish documentary evidence, as necessary, to assist [the Social Security Administration] in establishing the age, U.S. citizenship or alien status, true identity, and previously assigned social security number(s) . . . . A personal interview may be required of the applicant." 20 C.F.R. § 422.103(c)(1) (2006). At the hearing, THI stated that they were trying to get a new number for Zuniga, but that an in-person interview was required. In light of Zuniga's death, such a requirement will be impossible to fulfill. Therefore, despite the lack of clarity about why the new number is necessary, we affirm the district court's decision to the extent that it is based on a determination that THI will ultimately be unable to secure the necessary valid social security number for Zuniga.

7

**{12}** We briefly note that there is no merit to HSD's assertion in its initial rejection letter that THI could not represent Zuniga based on 8.353.2.9 NMAC. This regulation, relied on by HSD in their first letter rejecting THI, deals with administrative matters between healthcare providers and HSD, such as "providers who disagree with HSD decisions concerning their [providers'] participation in the New Mexico medicaid program, recoupment of overpayments due to provider billing error, and imposition of sanctions." *Id.* It tracks the provision of Section 27-2-9(C), which entitles hospitals to a hearing should they disagree with HSD's determination of the reimbursement due for caring for a Medicaid eligible patient. It states nothing about the rights or eligibility of a patient, or the patient's ability to pursue an application through his or her representative. We conclude that the regulation is not material to a determination of whether Zuniga's representative has any ability to seek "a hearing to assert . . . Zuniga's rights."

## III.    CONCLUSION

**{13}** Because THI admits that it cannot procure the required new social security number for a decedent such as Zuniga, we affirm the district court's decision. HSD's denial of THI's request for a fair hearing will stand.

{14}    **IT IS SO ORDERED.**


_____
**RODERICK T. KENNEDY, Chief Judg**e


**WE CONCUR:**



_____
**MICHAEL E. VIGIL, Judge**



_____
**TIMOTHY L. GARCIA, Judge**